UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ARNOLD M. CRUZ,

                         Plaintiff,

             - against -                           **OPINION & ORDER**

CORIZON HEALTH INC., V.C.B.C.                      13-CV-2563 (CS)
DR. HAROLD SELDEN, A.M.K.C.
DR. JEAN RICHARD, CITY OF NEW YORK,

                        Defendants.
----------------------------------------------------------x
Appearances:

Arnold M. Cruz
Yonkers, New York
Pro Se *Plaintiff*

J.C. O'Brien
Heidell, Pittoni, Murphy & Bach, LLP
New York, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is the Motion for Summary Judgment of Defendants Harold Selden, M.D., Jean Richard, M.D. (collectively, the "Individual Defendants"), Corizon Health Inc. ("Corizon"), and the City of New York (the "City") (collectively, the "Municipal Defendants"), (Doc. 56), seeking dismissal of Plaintiff Arnold M. Cruz's Amended Complaint ("AC"), (Doc. 14). For the following reasons, the Motion is GRANTED.

### I.    BACKGROUND

#### A. Factual Background

      The following facts are based on Defendants' Local Civil Rule 56.1 Statement of Material Facts ("Ds' 56.1 Stmt."), (Doc. 58), Plaintiff's Local Civil Rule 56.1 Counter-Statement

of Material Facts ("P's 56.1 Stmt."), (Doc. 62), and the supporting materials.  All facts are undisputed unless otherwise noted.

On February 9, 2012, Plaintiff came into the custody of the New York City Department of Corrections ("DOC").  (O'Brien Decl. Ex. E.)[1]  That same day, Defendant Dr. Harold Selden performed a physical examination of Plaintiff at the Vernon C. Bain Correctional Center ("V.C.B.C.") at Rikers Island.  (*Id.* Ex. F, at 298-302; Ds' 56.1 Stmt. ¶ 13.)  During the examination, Dr. Selden classified Mr. Cruz as "obese," and noted in the medical record that Plaintiff weighed 199 pounds, was 67 inches tall, and had a Body Mass Index of 31.0-31.9.  (O'Brien Decl. Ex. F, at 299-300.)  Plaintiff's blood sugar (glucose) was recorded as 232 mg/dl.  (*Id.* at 299; Ds' 56.1 Stmt. ¶ 18.)  Dr. Selden's medical notes state that Plaintiff had a history of hypertension (diagnosed in 2004), and a history of Type 2 diabetes (diagnosed in 2011).  (O'Brien Decl. Ex. F, at 298.)  During the February 9 visit, Dr. Selden prescribed Metformin HCL Tablet, 500 mg, to be taken twice daily.  (*Id.* at 300; Ds' 56.1 Stmt. ¶ 19.)  Metformin is a drug "used to control blood sugar levels and promote weight loss reduction."  (Feingold Decl. ¶ 7.)[2]  The medical record from February 9 also notes that Dr. Selden educated Plaintiff regarding diabetes, including "Glucose Monitoring frequency of fingerstick testing," the "importance of testing," the signs and symptoms of hyperglycemia and hypoglycemia, "portion control," and the "relationship between diet & activity."  (O'Brien Decl. Ex. F, at 298.)

Plaintiff denies telling Dr. Selden that he had a medical history of hypertension or diabetes, (P's 56.1 Stmt. ¶¶ 3-4; Cruz Dep. at 38:4-7),[3] denies that he suffered from obesity or

---

[1] "O'Brien Decl." refers to the Declaration of J.C. O'Brien in Support of Defendants' Motion for Summary Judgment.  (Doc. 57.)

[2] "Feingold Decl." refers to the Expert Declaration of Brian D. Feingold, M.D., FACP.  (O'Brien Decl. Ex. G.)

[3] "Cruz Dep." refers to the December 1, 2014 Deposition of Arnold Cruz.  (O'Brien Decl. Ex. B.)

2

hypertension, (P's 56.1 Stmt. ¶ 7), and stated in his deposition that he had never been diagnosed with hypertension or diabetes, (Cruz Dep. at 29:6-14).[4] Plaintiff further denies that there was any discussion with Dr. Selden about diabetes during the intake physical.[5] (P's 56.1 Stmt. ¶ 5.) After the intake exam on February 9, 2012, Plaintiff did not see or speak with Dr. Selden again, and Dr. Selden did not play any role in Plaintiff's subsequent medical care. (Ds' 56.1 Stmt. ¶ 26; Cruz Dep. 70:8-11, 17-19.) Plaintiff states that his "blood sugar and HbA1c levels were normal commencing two (2) days after [his] admission to V.C.B.C. and continued normal for thirteen (13) months," until his prescription of Metformin was discontinued. (P's 56.1 Stmt. ¶ 13.)

Between February 9, 2012, when Plaintiff was first prescribed Metformin by Dr. Selden, and March 25, 2013, when Plaintiff's Metformin was discontinued by a different provider, (O'Brien Decl. Ex. F, at 114), Plaintiff had multiple encounters with health care providers and was treated for various medical conditions, (*id.* at 115-296; Ds' 56.1 Stmt. ¶ 27). On several occasions, Plaintiff consulted with physicians regarding heartburn and gastroesophageal reflux disease ("GERD"), and was given various medications as treatment. (*See, e.g.*, O'Brien Decl. Ex. F, at 119, 216-17, 227, 234-35.) Plaintiff's medical record notes that on May 9, 2012 he denied having a history of diabetes and that his finger stick blood sugars were within normal limits. (*Id.* at 565.) In January 2013, Plaintiff was transferred from V.C.B.C. to the Anna M. Kross Center ("A.M.K.C.") on Rikers Island. (Doc. 2.)

On March 25, 2013, Mr. Cruz saw Registered Physician Assistant ("P.A.") Terry Gravesande because of elevated triglycerides. (O'Brien Decl. Ex. F, at 111.) P.A. Gravesande

---

[4] Plaintiff's medical records include a note by Dr. Jesus Miranda to the effect that Plaintiff stated during a May 9, 2012 medical visit: "'I was diagnosed with high blood pressure in 2006.'" (O'Brien Decl. Ex. F, at 565.)

[5] At his deposition Plaintiff stated he could not remember whether he discussed diabetes with Dr. Selden. (Cruz Dep. at 38:18-22.) In his Affidavit in Opposition to Defendants' Motion for Summary Judgment, Plaintiff stated that he "told Dr. Selden that he [did] not suffer from diabetes and had never been a diabetic." (Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment ("P's Opp."), (Doc. 61), ¶ 4.)

noted that Plaintiff had a history of diabetes but had stopped taking Metformin because it was "causing [d]izziness," and that Plaintiff was throwing it away. (*Id.*) P.A. Gravesande also noted that Plaintiff's random blood sugar test showed a glucose level of 115 mg/dl and that his A1C level had dropped from 6.0 to 5.6. (*Id.* at 111-12.) Plaintiff testified that during this visit, P.A. Gravesande told him that his "HBAIC [*sic*] [was] normal," that his finger stick test was normal, and that there was no reason for him to be there. (Cruz Dep. at 68:25-69:3.) P.A. Gravesande called Defendant Dr. Jean Richard (apparently on speakerphone) regarding Plaintiff's Metformin, and Dr. Richard told P.A. Gravesande to "stop it." (*Id.* at 67:21-24, 68:24-69:8, 69:25-70:4.) P.A. Gravesande discontinued Plaintiff's Metformin tablets and noted on the record, "No Diabetes." (O'Brien Decl. Ex. F, at 114.) According to the medical record, Plaintiff weighed 179 pounds during this March 25 visit. (*Id.* at 111.) Plaintiff never met Dr. Richard in person, and the only contact he had with him was through and during the visit with P.A. Gravesande. (Cruz Dep. at 69:23-70:7.)

After the March 25 visit and the discontinuation of the Metformin, Plaintiff presented to several other physicians complaining of heartburn or other gastro-intestinal ailments and received medications to treat those conditions. (*See, e.g.*, O'Brien Decl. Ex. F, at 15-16, 34-35, 52-53, 103-04.) Plaintiff was released from DOC custody on July 23, 2014. (Cruz Dep. at 18:23-25.)

**B. Procedural History**

Plaintiff initially filed this action against V.C.B.C. Prison Health Services, A.M.K.C. Prison Health Services and Dr. Jean Richard on April 16, 2013. (Doc. 2.) On July 29, 2013, the Court dismissed Plaintiff's claims against V.C.B.C. Prison Health Services and A.M.K.C. Prison Health Services, and directed the Clerk of Court to add Corizon Health Inc. as a Defendant in

this action.  (Doc.  13.)  The Court also granted Plaintiff leave to file an amended complaint.  (*Id.*)  On August, 30, 2013, Plaintiff filed an amended complaint under 42 U.S.C. § 1983 against Corizon, Dr. Selden, Dr. Richard and the City, alleging deliberate indifference to his medical needs, in violation of the Eighth and Fourteenth Amendments to the Constitution, based on the alleged misdiagnosis of diabetes.  (Doc. 14.)  Plaintiff was deposed on December 1, 2014, (*see* O'Brien Decl. Ex. B), and on December 24, 2014, Defendants served an expert report of Brian D. Feingold, M.D., FACP, dated December 15, 2014, (*see id.* Ex. C).  Defendants have also submitted a declaration of Dr. Feingold in connection with the instant motion.  (*Id.* Ex. G.)  The Court will refer to the latter in this Opinion and Order.  Plaintiff has not submitted any expert reports or taken any testimony in connection with this case.  On November 30, 2015, Defendants moved for summary judgment.  (Doc. 56.)

## II.     DISCUSSION

### A.  Legal Standards

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden then shifts to the non-movant "to present evidence sufficient to satisfy every element of

the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where, as here, an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Because Plaintiff is proceeding *pro se*, the Court must read his submissions "liberally" and interpret them "to raise the strongest arguments" that they suggest. *Chavis v. Chappius*, 618

6

F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted). Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks omitted).

### B. Duty to Provide Adequate Medical Care Under the Eighth Amendment

"A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care . . . arises from the Eighth Amendment's prohibition of cruel and unusual punishment," *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (internal quotation marks omitted); *see West v. Atkins*, 487 U.S. 42, 48 (1988) (Eighth Amendment claim of deliberate indifference actionable under 42 U.S.C. § 1983), which is "applicable to the states through the Fourteenth Amendment," *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) (summary order).[6] A pretrial detainee's protection against mistreatment arises under the Due Process Clause (of the Fourteenth Amendment in the case of state prisoners or the Fifth Amendment in the case of federal prisoners). *Caiozzo*, 581 F.3d at 69. But "[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment," and that standard is that of the Eighth Amendment. *Id.* at 72.[7]

---

[6] Copies of all unpublished decisions cited in this Opinion will be mailed to Plaintiff.

[7] The Supreme Court in *Kingsley v. Hendrickson* held that a pretrial detainee alleging excessive force under the Fourteenth Amendment was subject to a lighter burden than a convicted prisoner alleging excessive force under the Eighth Amendment. 135 S. Ct. 2466, 2475-76 (2015). The Second Circuit has not addressed whether the *Kingsley* decision affects its holding that the Fourteenth Amendment and Eighth Amendment standards are the same when the claim is of deliberate indifference to medical needs, and since *Kingsley* courts in the Circuit have continued to follow that rule. *See, e.g.*, *Jabot v. Rench*, No. 15-CV-725, 2016 WL 1128091, at *5 n.8 (N.D.N.Y. Jan. 12, 2016), *report and recommendation adopted*, 2016 WL 1122057 (N.D.N.Y. Mar. 22, 2016); *Moran v. Livingston*, 155 F.

While the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), "not every lapse in medical care is a constitutional wrong. Rather, 'a prison official violates the Eighth Amendment only when two requirements'" – one objective and one subjective – "'are met.'" *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer*, 511 U.S. at 834).

First, the prisoner must prove, objectively, that he was "actually deprived of adequate medical care[,] . . . [as] the prison official's duty is only to provide reasonable care," *id.* at 279 (citing *Farmer*, 511 U.S. at 844-47), and "that the alleged deprivation of medical treatment [wa]s . . . sufficiently serious – that is, the prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain," *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotation marks omitted); *see Williams v. Raimo*, No. 10-CV-245, 2011 WL 6026115, at *3 (N.D.N.Y. July 22, 2011) ("no distinct litmus test" for determining whether medical condition is "serious," but court may look at non-exhaustive list of factors, including whether (1) impairment is one that reasonable doctor would find important and worthy to treat, (2) condition affects individual's daily life, and (3) prisoner suffers from chronic and substantial pain). Where the inadequacy alleged "is in the medical treatment given, the seriousness inquiry is narrower. . . . [If] the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Goris v. Breslin*, 402 F. App'x 582, 584-85 (2d Cir. 2010) (summary order) (citation and internal quotation marks omitted).

---

Supp. 3d 278, 287 n.1 (W.D.N.Y. 2016); *Roberts v. C-73 Med. Dir.*, No. 14-CV-5198, 2015 WL 4253796, at *3 n.3 (S.D.N.Y. July 13, 2015). I will do so as well although, as discussed below, the outcome would be the same even if, as in *Kingsley*, *see* 135 S. Ct. at 2472-73, Plaintiff's burden were only to prove Defendants' liability objectively, not subjectively.

Second, the prisoner must prove, subjectively, that the charged official acted with a sufficiently culpable state of mind. *Salahuddin*, 467 F.3d at 280-81; *see Farmer*, 511 U.S. at 835 ("[D]eliberate indifference entails something more than mere negligence . . . [but] it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."). The prisoner must prove that the charged official knew of and disregarded "'an excessive risk to inmate health or safety; the official must [have] both be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . must also [have] draw[n] the inference.'" *Johnson*, 412 F.3d at 403 (quoting *Farmer*, 511 U.S. at 837); *see Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (*per curiam*) (equating "deliberate indifference" with criminal "recklessness").

"It is well-established that [neither] mere disagreement over the proper treatment," *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998), nor "[m]edical malpractice . . . become a constitutional violation merely because the victim is a prisoner," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see Zackery v. Mesrobian*, 299 F. App'x 598, 601 (7th Cir. 2008) ("[D]issatisfaction with a doctor's chosen course of treatment – even when that course was negligent – is insufficient to establish deliberate indifference."); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment."); *cf. Choice v. Blackwell,* No. 01-CV-1931, 2002 WL 32079466, at *7 (D.S.C. Mar. 29, 2002) ("[A]lthough the provision of medical care by prison officials is not discretionary, the type and amount of medical treatment is discretionary."),

*aff'd*, 37 F. App'x 669 (4th Cir. 2002) (*per curium*).  Rather, to state an Eighth Amendment deliberate indifference claim, an inmate "must demonstrate that the defendants act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm w[ould] result." *Farid v. Ellen*, 593 F.3d 233, 248 (2d Cir. 2010) (alterations in original) (internal quotation marks omitted).  "[P]rison officials . . . may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

### C. Objective Requirement of Eighth Amendment Violation

In evaluating the objective requirement, the Court must determine "(1) 'whether the prisoner was actually deprived of adequate medical care,' and (2) whether 'the inadequacy in medical care is sufficiently serious.'" *Martinez v. Aycock-W.*, No. 12-CV-4574, 2016 WL 407294, at *5 (S.D.N.Y. Feb. 1, 2016) (quoting *Salahuddin*, 467 F.3d at 279).  "Under the first inquiry, adequate care is 'reasonable care' such that 'prison officials who act reasonably cannot be found liable.'" *Id.* (quoting *Farmer*, 511 U.S. at 845).  To survive the second inquiry, a Plaintiff must show that the alleged deprivation was "sufficiently serious" in that it is a "condition of urgency . . . that may produce death, degeneration, or extreme pain." *Johnson*, 412 F.3d at 403 (internal quotation marks omitted).

#### 1. Dr. Selden

Plaintiff's claims as to Dr. Selden cannot survive either inquiry.  Plaintiff alleges that Dr. Selden's diagnosis of diabetes and Plaintiff's subsequent use of Metformin, prescribed by Dr. Selden, caused serious injuries.  (P's Opp. ¶¶ 3-4.)  The record is clear, however, that Plaintiff was given adequate care and Dr. Selden acted reasonably, which is all that is required under the Eighth Amendment.  *See Farmer*, 511 U.S. at 832, 845 (Eighth Amendment requires official to take "reasonable measures to guarantee the safety of . . . inmates" and "prison officials who act

10

reasonably cannot be found liable") (internal quotation marks omitted).  Dr. Selden saw Plaintiff only once – on February 9, 2012 – when he prescribed Metformin.  (Cruz Dep. at 70:8-19.)  During this visit, Plaintiff's glucose levels were "232," (O'Brien Decl. Ex. F, at 299), which, according to defense expert Dr. Brian Feingold, exceeded the glucose level necessary to meet the American Diabetes Association's criteria for diagnosing a patient with diabetes, (Feingold Decl. ¶ 5).  Further, Plaintiff had a Body Mass Index of 31 on the date of the intake exam with Dr. Selden, indicating that he was clinically obese, which along with his elevated glucose level, hypertension and hyperlipidemia, put him at risk for cardiovascular disease, for which blood sugar reduction would be a standard course of treatment.  (*Id.* ¶¶ 4, 6.)  Metformin is "a drug which is used to control blood sugar levels and promote weight loss reduction."  (*Id.* ¶ 7.)  Thus, regardless of whether Plaintiff told Dr. Selden he had previously been diagnosed with diabetes, Dr. Selden's diagnosis of diabetes was reasonable based on the statistical information available to him.  *See Idowu v. Middleton*, No. 12-CV-1238, 2013 WL 4780042, at *7 (S.D.N.Y. Aug. 5, 2013) (plaintiff could not demonstrate "alleged misdiagnosis constituted deprivation of adequate medical care" based on the diagnostic technique utilized by the physicians).  Plaintiff has not provided any evidence from which a rational jury could conclude that Dr. Selden "acted unreasonably in assessing Plaintiff's medical needs."  *Id.*[8]

As to the second inquiry under the objective prong, Plaintiff has not demonstrated that his injuries were sufficiently serious – *i.e.*, that the alleged deprivation of proper care created such a

---

[8] Plaintiff states in his affidavit in opposition to Defendants' motion that he told Dr. Selden that he did not suffer from diabetes.  (P's Opp. ¶ 4.)  Plaintiff previously testified that he could not remember whether he spoke with Dr. Selden about diabetes.  (Cruz Dep. at 38:18-22 (in response to being asked if he discussed diabetes with Dr. Selden Plaintiff stated: "I don't remember.  No, I don't think so.").)  A party, however, "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous deposition testimony."  *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).  Plaintiff's claim that he told Dr. Selden he did not have diabetes is therefore insufficient to create an issue of material fact, and, in any event, any such fact dispute is not material, because even if Plaintiff had so informed Dr. Selden, his test results and medical condition at the time of the visit reasonably justified Dr. Selden's prescription of Metformin.  Further, in his

condition of urgency that it might have produced "death, degeneration, or extreme pain." *Johnson*, 412 F.3d at 403 (internal quotation marks omitted).  Plaintiff's alleged injuries due to his use of Metformin include:  weight loss, abdominal pain, fear of future misdiagnosis, fear of kidney and liver failure, loss of sleep, stress, dizziness, migraines and nightmares about medical malpractice.  (AC ¶ IV; Cruz Dep. at 59:3-12.)  Dr. Feingold opined that "[t]here is no evidence that Mr. Cruz suffered any harm from taking Metformin for 11 months"[9] and that his stomach complaints were present prior to taking the Metformin and persisted after he stopped taking it.  (Feingold Decl. ¶ 12.)  Dr. Feingold further opined that "[t]here is no evidence to suggest that any of plaintiff's other complaints, including dizziness, hair loss, visual problems and difficulty concentrating resulted from his Metformin use" and that "these types of symptoms are highly unlikely to be related to Metformin use."  (*Id.* ¶ 14.)  Plaintiff has not provided any evidence to rebut Dr. Feingold's findings that his complained-of injuries were unrelated to the Metformin, or set forth any other basis on which a rational jury could find that Metformin was capable of causing or in fact caused these injuries.

In addition, there is no evidence to suggest that Plaintiff's injuries were "sufficiently serious."  Plaintiff's twenty-pound drop in weight was a healthy improvement as opposed to a serious injury, (*id.* ¶ 11), and there is no evidence to suggest that Plaintiff's loss of sleep,

---

affidavit in opposition, Plaintiff refers to his medical records from March 1, 2012 and May 9, 2012, attempting to show, it seems, that he was never diabetic and therefore should not have been prescribed Metformin.  (P's Opp. ¶ 4; O'Brien Decl. Ex. F, at 565, 595.)  These records note that Plaintiff stated on these two occasions that he was not diabetic, but they do not rebut either the fact that Plaintiff's glucose exceeded a normal level when Dr. Selden prescribed the Metformin or Dr. Feingold's testimony that the prescription at that time was medically reasonable.  The records do not aid Plaintiff's claim as to Dr. Richard because they seem to support his course of treatment, which was recommending that the Metformin be discontinued.

[9] Dr. Feingold wrote "11 months" in his report, (Feingold Decl. ¶¶ 3, 12), even though Plaintiff was taking Metformin for 13 months, from February, 2012 to March, 2013, (Ds' 56.1 Stmt. ¶¶ 19, 32.)  Because the rest of his report refers to the correct dates when Plaintiff started and stopped taking Metformin, this error does not alter his analysis or conclusion that Metformin would not have caused Plaintiff's alleged injuries.

migraines, fear and stress rise to the level of a condition of urgency producing "death, degeneration, or extreme pain." *Johnson*, 412 F.3d at 403 (internal quotation marks omitted). Plaintiff has not alleged any physical symptoms that went along with these psychological injuries. Finally, Plaintiff alleges he has suffered from severe abdominal pain, but provides no evidence linking that pain to his use of Metformin. Indeed, the fact that Plaintiff continued to suffer from abdominal pain at the time of his deposition belied any connection to the use of Metformin, which had been discontinued many months prior to the deposition. (Cruz Dep. at 59:22-23.) Dr. Feingold opined that the allegation that Metformin would have remained in Plaintiff's system months after it was discontinued "is not accurate and not medically possible as the medication would have been metabolized and eliminated from his system within a few days of its discontinuance." (Feingold Decl. ¶ 13.) Plaintiff has offered no evidence contradicting that expert opinion or otherwise creating an issue of fact.

Plaintiff has failed to identify any evidence to show that his claims against Dr. Selden satisfy the standard for the objective prong of deliberate indifference.

### 2. *Dr. Richard*

As with Dr. Selden, Plaintiff has failed to show that Dr. Richard's actions evidenced inadequate care or that Plaintiff's injuries were sufficiently serious. *See Martinez*, 2016 WL 407294, at *5. Plaintiff never met Dr. Richard in person. The only interaction they had was through P.A. Gravesande over the phone during Plaintiff's March 25, 2013 visit when Dr. Richard recommended discontinuing Plaintiff's Metformin. (O'Brien Decl. Ex. F, at 114; Cruz Dep. at 69:4-6, 69:23-70:7.)[10] Based on Plaintiff's description of his encounter with Dr. Richard,

---

[10] Plaintiff could not recall P.A. Gravesande's name during his deposition, (Cruz Dep. at 65:22-66:19), but the encounter he described, in which Dr. Richard said to stop the Metformin, seems to match the March 25, 2013 visit. Plaintiff does not contend otherwise.

13

(Cruz Dep. at 67:21-69:8), the medical records from the March 25, 2013 visit, at which time P.A. Gravesande noted that Plaintiff did not have diabetes, (O'Brien Decl. Ex. F, at 114), and Dr. Feingold's testimony, (Feingold Decl. ¶ 10) (opining that the "decision to discontinue [Plaintiff's] Metformin on March 25, 2013 was appropriate and within the standard of care given plaintiff's reduced blood sugar"), Dr. Richard acted reasonably in discontinuing the Metformin and therefore his medical care was adequate.  *See Salahuddin*, 467 F.3d at 279 (describing duty of prison official as "only to provide reasonable care").  Indeed, given that Plaintiff claims that the Metformin should never have been prescribed, it is difficult to see how he finds fault with the doctor who discontinued it.

Further, Plaintiff alleges the same injuries with respect to Dr. Selden and Dr. Richard, and as discussed in detail in connection with Dr. Selden, Plaintiff has not alleged that these injuries were sufficiently serious.  Plaintiff has not identified any evidence that would allow a jury to conclude that his claims against Dr. Richard satisfy the objective prong of deliberate indifference.

Accordingly, because Plaintiff has provided no evidence creating a genuine issue of fact as to the objective prong of the test, both doctors are entitled to summary judgment.

### D. Subjective Requirement of Eighth Amendment Violation

Although I have found that Plaintiff cannot satisfy the objective prong, and therefore need not address the subjective prong, I also find in any event that there is no question of material fact as to Defendants' state of mind with respect to Plaintiff's treatment.

The subjective requirement for an Eighth Amendment violation requires that the official acted with a "sufficiently culpable state of mind."  *Salahuddin*, 467 F.3d at 280.  "[A] plaintiff must prove that the official acted with 'deliberate indifference,' which is a state of mind

equivalent to 'subjective recklessness,' as that term is used in criminal law." *Idowu*, 2013 WL 4780042, at *6 (quoting *Salahuddin*, 467 F.3d at 280). The official must have acted or failed to act "while actually aware of a substantial risk that serious inmate harm [would] result." *Salahuddin*, 467 F.3d at 280. General "dissatisfaction with a doctor's chosen course of treatment – even when that course was negligent – is insufficient to establish deliberate indifference." *Zackery*, 299 F. App'x at 601; *see Garcia v. Katukota*, 362 F. App'x 622, 622 (9th Cir. 2010) (granting summary judgment because "evidence of medical misdiagnosis and of a difference of medical opinion are insufficient to show deliberate indifference"); *Idowu*, 2013 WL 4780042, at *9 (disagreement over diagnostic technique and medical judgment insufficient to form basis for deliberate indifference claim).

1. *Dr. Selden*

Dr. Selden's prescription of Metformin to treat Plaintiff was not an act of deliberate indifference. Plaintiff has "presented no evidence that [Dr. Selden's] diagnosis and chosen course of treatment were so far afield of accepted professional standards as to raise an inference of deliberate indifference." *Zackery*, 299 F. App'x at 601. To the contrary, according to Plaintiff's medical records, his glucose levels exceeded the normal range and fell with the American Diabetes Association's criteria for a diagnosis of diabetes. (Feingold Decl. ¶ 5.) Metformin was thus an appropriate treatment for Dr. Selden to prescribe at the time, (*id.* ¶¶ 7-8), and Plaintiff's disagreement with the treatment, (P's Opp. ¶¶ 3, 5), does not render Dr. Selden deliberately indifferent to Plaintiff's medical needs, *see Zackery*, 299 F. App'x at 601. Even if Dr. Selden was negligent in prescribing the Metformin, a proposition for which Plaintiff has not offered any evidence, negligent conduct does not satisfy the mental state required to show deliberate indifference. *See Irby v. Frisnia*, 119 F. Supp. 2d 130, 132 (N.D.N.Y. 2000) (granting

summary judgment for insufficient evidence as to deliberate indifference where defendants were "[a]t most . . . guilty of negligence" in failing to diagnose plaintiff's injury, but where "this misdiagnosis was based on a reasonable, although incorrect, assessment of Plaintiff's condition").

### 2. *Dr. Richard*

Dr. Richard's treatment of Plaintiff – his discontinuation of the Metformin – does not constitute deliberate indifference.  At the time Dr. Richard recommended that Plaintiff stop using Metformin, Plaintiff's new test results indicated a glucose level of 115 mg/dl, much lower than 232 mg/dl that was recorded when Dr. Selden prescribed the Metformin, and he had lost twenty pounds.  (O'Brien Decl. Ex. F, at 111-12, 299.)  Dr. Feingold opined that Dr. Richard's recommendation was a reasonable medical decision in this context.  (Feingold Decl. ¶ 10.) There is no evidence that Dr. Richard was aware of a risk of serious harm that would result to Plaintiff due to his recommended course of treatment.  And, as discussed, it is hard to see how Plaintiff could argue otherwise, given that he believes Dr. Richard correctly determined that he did not need Metformin.

Plaintiff has not adduced any evidence "that defendants were deliberately indifferent to a serious medical need," *Simpson v. Oakes,* 640 F. App'x 86, 87 (2d Cir. 2016) (summary order), or offered any evidence to rebut "defendants' detailed declarations and [Plaintiff's] own voluminous medical records" that show that Drs. Selden and Richard were not deliberately indifferent, *id.* at 88.  The record shows that Plaintiff was given adequate medical care, and "[i]nsofar as [Plaintiff] disagrees with defendants' medical judgment[s] as to the proper course of treatment, that does not support a constitutional claim for deliberate indifference." *Id.*  The record is simply devoid of evidence that either doctor was aware of facts suggesting the

existence of a substantial risk of serious harm or drew the inference that such harm might result. *See Johnson*, 412 F.3d at 403. Accordingly, there is no genuine issue of material fact as to Plaintiff's constitutional claims against the Individual Defendants, and their motion for summary judgment is therefore granted.

### E. Municipal Liability

Plaintiff alleges that Corizon and the City are also liable for violating his constitutional rights. Municipalities may be sued directly for constitutional violations pursuant to 42 U.S.C. § 1983, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), but they cannot be held liable for acts of their employees "by application of the doctrine of *respondeat superior*," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986), *accord Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997) (municipality may not be found liable simply because one of its employees committed a tort).[11] Rather, a plaintiff must show that a violation of his or her constitutional rights resulted from a municipal policy or custom. *Monell*, 436 U.S. at 690–91. The existence of such a policy or custom may be pleaded by alleging:

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority . . . ; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Bonds v. Suffolk Cty. Sheriff's Dep't*, No. 05-CV-3109, 2006 WL 3681206, at *2 (E.D.N.Y. Dec. 5, 2006). Plaintiff has not plausibly put forth any facts that the constitutional violations he has

---

[11] Plaintiff has brought claims against the City, a municipality, and Corizon, a private entity performing a municipal function. Despite being a private entity, "Corizon enjoys the benefit of the *Monell* requirements for the same reason that it may be named as a defendant in a § 1983 suit." *Bess v. City of N.Y.*, No. 11-CV-7604, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013). Corizon provides medical care in prisons and thus "performs a role traditionally within the exclusive prerogative of the state," making it the "functional equivalent of the municipality." *Id.* The analysis under *Monell* thus applies equally to Corizon and the City.

alleged were caused by policies or customs of Corizon or the City.  Plaintiff merely alleges that "All the defendants are liable in that they are public servants being employed by the New York City Department of Corrections [and] did act under the color of state law, and violated [Plaintiff's] rights thereto."  (AC ¶ III.C.)  There are no allegations that the employees "were acting pursuant to anything like an official policy."  *Bess*, 2013 WL 1164919, at *2.

More fundamentally, where, as here, there is no underlying constitutional violation, there can be no municipal liability.  *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006); *Vassallo v. Lando*, 591 F. Supp. 2d 172, 202 (E.D.N.Y. 2008).

Accordingly, summary judgment is granted as to Plaintiff's claims against the Municipal Defendants.

### F. Plaintiff's State Law Claims

In addition to his constitutional claims under federal law, Plaintiff may intend to advance claims of negligence or medical malpractice under New York law.  The "traditional 'values of judicial economy, convenience, fairness, and comity,'" however, weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that all of the claims over which this Court has original jurisdiction[12] should be dismissed, I decline to exercise supplemental jurisdiction over any remaining state-law causes of action.  *See id.* (citing 28 U.S.C. § 1367(c)(3)).

---

[12] Plaintiff alleges only federal-question jurisdiction in the AC and does not set forth any basis for diversity jurisdiction.  (AC ¶ II. A, B.)

### III. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the pending Motion, (Doc. 56), enter judgment in Defendants' favor, and close the case.

**SO ORDERED**.

Dated: August 29, 2016
      White Plains, New York

                                                              *Cathy Seibel*
                                                    CATHY SEIBEL, U.S.D.J.